America. Good morning, Your Honors. Good morning. My name is Robert Spector. I represent the government on this appeal. I'd respectfully ask for two minutes for rebuttal. Your Honor, in the government's view, this appeal really comes down to one issue, one issue that we think is governed by this Court's prior decisions, and that is whether United States v. Walker is really the decision that we think is most on point. In that case in 2006, which postdated Chernovsky, however we're going to pronounce that decision, and specifically said that to cause physical injury by means of a deadly weapon or dangerous instrument necessarily is to use physical force. That decision in 2006, and in this case, the statute at issue, the First Degree Assault statute, talks about serious physical injury, and in our view, that word means a lot. In our view, the First Degree Assault, the subsection we're talking about, the use of that word serious, the reason it means a lot is because the way it's defined under Connecticut law is it means something capable of causing death. Counsel, how does the fact that the Supreme Court invalidated the residual clause of the ACCA affect your argument? Not at all, Your Honor. Not at all. Why? Because our argument is that the statute at issue qualifies as a violent felony under the force clause, under the elements clause, not the residual clause. In this particular case, could it have been committed without using violent force? No, Your Honor. In our view, it could not have been committed without using violent force, and our view is based on a few things. Primarily, it's based on the wording in the statute. When the statute says you have to intend to cause serious physical injury by use of a deadly weapon or dangerous instrument, and you cause that injury, you're guilty. Under Walker, this court said that counts. What Judge Hall was troubled by is that in Walker, the court didn't talk about the word dangerous or the phrase dangerous instrument, and because dangerous instrument could be a poison or a drug, she felt the Walker decision didn't address that. Our view is that very issue has been addressed by three other circuits, by Castleman, and then by this court in 2016 in Hill. While the court didn't address it in 2006, the court did address it in 2016 by saying indirect force or indirect harm counts.  In Hill, the mandate has not issued yet? Yes, Your Honor. I think I could be . . . Obviously, Your Honors know better than I do, but I think it's being held back because of the DiMeo case in the Supreme Court, which is considering, I think, to invalidate the residual clause of the immigration statute, which wouldn't impact the portion of Hill that we're talking about. The portion of Hill that we're talking about really addresses this issue, and Hill, it had to do with some language in the Hobbs Act statute about fear of injury. The bottom line is what Hill says, which to me is powerful, is in Chernovsky, this decision from 2003, the court didn't have this Castleman decision from the Supreme Court. What Castleman stands for is, yes, by poisoning someone, that's use of force. The analogy that is drawn is firing a gun. When you . . . Wasn't the analysis in Castleman tied directly to the fact that it was domestic violence, and hadn't that been part of the motivation for that statute, as the legislature in Tennessee said? I think so, Your Honor, but I think the language that essentially helps the government in Castleman, which is the language this court repeated in Hill, had nothing to do with the definition of domestic violence. It had to do with the definition of force, and how . . . In other words, the bottom line question for this court is, can you hold that causing serious physical injury is equivalent to using violent force? That's the bottom line. Our view is, you've already held that in Walker, you've reaffirmed it in Hill, and there's three other circuits, the 6th, the 7th, and the 8th, that have recently addressed it, and addressed it very specifically on the issues raised in this case. After Johnson? After the Johnson 2, as you call it? Yes, Your Honor. Two of those. The 7th and 8th Circuit post-dated Johnson 2. I believe it was Rice and Waters. The Anderson decision out of the 6th Circuit predated Johnson 2, but significantly for us post-dated Johnson 1, which is really the decision that we're . . . That's the decision at issue here, is what is violent force? Because Johnson 2 really doesn't matter. Our position is the residual clause really has nothing to do with this case. It's Johnson 1, what does violent force mean? In this Anderson case, it's literally the identical language, a serious physical injury by use of a deadly weapon or dangerous instrument. The 6th Circuit, in my view, has a powerful decision in Anderson that's right on point. The district court here thought that Johnson 2 made all the difference for Mr. Villanueva. In the district court's mind, what Johnson 2 did was open the door. I think this court said it in its decision here by granting the permission for a second 2255. We don't quarrel with that. Johnson 2 opened the door, the procedural door, to allow the defendant to go in and make these claims. Once . . . Substituting one pill for another, something that's done very gently without any abrupt movement or force, if it can cause serious injury, is violent force. Yes, Your Honor, if your intent is to kill that person, absolutely. The analogy, and I know I'm out of time, the analogy would be pushing that trigger. That gentle push on the trigger, you shoot somebody in the head, it's the bullet that exerted the violent force. If you gently put cyanide in somebody's drink, if you intend to cause them serious physical injury under Connecticut law, you've certainly exerted violent force on their body. That's really the main . . . Can you just remind me the year of the conviction that's at issue here as to whether it would use force? Just the year. Mr. Villanueva, I believe, was convicted in 2000. You mean Mr. Villanueva? I'm sorry, Your Honor. Yeah. The year of the conviction, not what he stands convicted, as to what . . . Oh, I'm sorry. One where we're debating whether it counts. I understand, Your Honor. That conviction. That's a good question. It's in my appendix. If I can answer that on rebuttal . . . That's a long time ago. It is a long time ago. I will find the answer. Is it right we do not have the transcript of the colloquy that attended that plea? I don't believe . . . We have the certified judgment, and I don't know if we have the . . . I know we had some transcripts. We have the sentencing transcript. Which district is it in? It's in Connecticut. It was a Connecticut State conviction. Do you know what's available? I'll have to defer to defense counsel. It didn't enlighten the issue. It did not enlighten . . . The document that enlightened the issue . . . The whole problem would go away if in the colloquy, when the judge was ascertaining the factual basis, it was an assault conviction. Yes. He did not admit . . . And did you point a gun at him, and he says, yes, I did? He did not admit that. I believe it was a NOLO plea, and he did not admit to . . . Oh, it was a NOLO plea? Yes, Your Honor. So we do not have the argument available to us that he admitted . . . The factual basis was that he shot somebody in the shoulder with a firearm, but he didn't admit to that. And so what we're left with is literally the fact of the conviction. We have the certified judgment. It's in the appendix, but it . . . But the indictment said he shot somebody. We don't have . . . I don't believe we have the charging document. We don't have the indictment either. We have the certified copy of the judgment, and I believe we have the fact . . . And the judge referred to the statute. Yes, Your Honor. So I think the bottom line answer to your question, and I apologize for not having the specifics, is we're left with this issue. Is 53A1 . . . The indictment is probably retrievable, right? I think what we retrieved was a handwritten document, and again, I'll trust defense counsel to correct me if I'm wrong, which simply said 53A-A1 without specifying the shooting, the fact that it was a shooting. How do you know it was a shooting? Well, it's in the . . . I believe it's in the factual basis for the plea, and then repeated in the PSR. So he didn't admit to it. It was the facts that were put forth . . . For purposes of deciding a use of force, if he doesn't contest it, and you allege it, isn't that enough? I don't think so under your case law, Your Honor. I certainly wish it were enough, but I think under your case law, Your Honor, the defendant would have to explicitly admit or acknowledge that he did what the prosecutor . . . I think it's Moreno I could be wrong, the more recently cited, and I think both of our briefs, I think I argued that one and didn't prevail. But I think the prosecutor . . . I'm sorry, the defendant would have to admit to that fact. I thought for . . . well, maybe we've said that, but I thought for the modified approach you can look to the indictment. You absolutely can, Your Honor, and if in this case we had . . . in some cases you have a long-form indictment, which is typical to what we use in federal court, which says, on this date, this person used a firearm to shoot victim X, and it violated the statute, I think we would be in a very different position. We don't have that. I think the document we have just says, violated 53A or 53A . . . Did you change your practice recently? Well, it's the state court that is in charge of this, the state prosecutors, I can assure you we've talked to them about the ways of charging and perhaps it could be a better done, and the audience, it wasn't a . . . I'm not sure they really thought what we had to say. Are you telling them that you keep losing cases because of the way they . . . We have absolutely talked to them about that. We've talked to them about the Alford plea issue many times. Thank you. Thank you, Your Honor. You've reserved two minutes for rebuttal. Your Honor, to get to your last question about the transcript, I think we have a transcript from the assault of the officer conviction, which was a no-low, but obviously that's not really an issue here. The government hasn't preserved that issue for the appeal. As for a lot of the other comments . . . and by the way, my name is Charles Wilson. I'm from the Federal Defender's Office. As for a lot of the other comments by the government in terms of its view on things, I've got to say, I think Judge Hall addressed them all in her decision. It's a lengthy decision. I know she hit upon Castleman, which had been decided before she issued her decision. The government brought Anderson Rice to her attention. I don't know about Water, but Anderson and Rice are both in there. She noted, I think, the same comment that Your Honor's question goes to about the breadth of Castleman. Castleman is a domestic violence provision. It's very broad. They take pains to give about three or four different reasons why it's different than Johnson in the primary opinion in that case. I think that's important to Judge Hall's analysis here. What do you say about Castleman? What do I say about Castleman? I'd go with Judge Hall, of course. I'm not used to sitting over there, frankly, but obviously, I'm going to go with her approach to it. When I read Castleman, I think it doesn't get to where we are. Now, I have a more fundamental difference with the government that Judge Hall picks up on. I'm sorry. It said that using poison is the use of force. I think they're looking at it in the context of the domestic violence statute. Is it poison, poison, whether you poison your wife or your mortal enemy? In terms of who the victim is, I don't know that that would alter the analysis. I think when we go through . . . Their point was they were describing the significance for that statute of using poison. They weren't saying it depends on the victim, did they? No, they didn't say it depended on the victim, but it depends on how you're going to define force. In Castleman, they define force really, really broad. They go for the common law definition, a definition that seems to be broader than what we have at issue here in the Armed Criminal Act. One issue that I wanted to emphasize a little bit . . . What's the daylight between Castleman's talking about sprinkling poison and the district court's example of using poison? I think there's a couple of things about what's the daylight difference. One is we're talking about a Connecticut statute, Connecticut cases, Connecticut jury instructions. We have to examine it in light of that context. When we look at the Connecticut statute, obviously the word force is not in there. That's the first thing they would tell you. It's not an element at all. When we look to the Connecticut jury instructions, again, the term force is not in there, again signaling that a jury doesn't have to find force. I think when we look at a few cases that we have cited in our briefs and then other statutes in Connecticut about sexual assault, robbery, Connecticut knows how to use the term force when it wants to use the term force. There's another ACA Johnson appeal that's coming up before the court, the Shabazz case, where we talk about robbery because robbery has the term force in it. The question there is going to be how much force is enough force and things of that nature. Here, when we look at the prong that's left of ACA that really is the only one at issue here, what I always call the elements clause, it's requiring that there be an element. When we look at the term element, especially in light of Mathis, for example, and Justice Kagan's decision there, that word element means legal element. When I get a plea agreement, it's the thing at the bottom of the pages that basically my client has to have done in order to be guilty of the offense. Or if we go to trial, it's the things that the jury has to find in order to find the person guilty. The government, when we were arguing this case before Judge Hall, more often used the term involves force. First degree assault often involves force. I don't know that I can dispute that really. Involves is a much broader term. That's the term that was in the residual clause that's now struck. It's obviously meant to be something different than involves if you have the term element in that remaining clause there. At some point, the rhetoric turned to force clause because then we're avoiding the term element, but Judge Hall in her decision picks up on this, that the term element means element, that in its elements of force are not found in the Connecticut statutes. I understand that they don't use the word force. What they say is to cause serious physical injury by means of a deadly weapon or a dangerous instrument. That's what they say. That's the statute. That's pretty much the statute. I agree, Your Honor. Serious bodily injury, I think, may be the term. I'm not sure. Physical. I thought it said physical. Physical is the one that's in the elements clause, but I'll defer to you. Either way, physical or bodily, the guy's getting hurt. Well, if he gets murdered, you got a murder statute, but the issue that Judge Hall brought up that, frankly, is one that I'm waiting to see in a case from the government is the idea of the seller of heroin substitutes in something else, makes it bad heroin. In today's world, we would know to call that fentanyl and gives that to a purchaser because maybe the purchaser still owes him money. That's going to rise to the level of first-degree assault, potentially, where there's no real force that's used. I'm hesitant to go down the analogy route. I will recognize- Let's deal with the other government argument here. If you have, under the modified categorical approach, a statute that in most of its imaginable applications involves force, shooting, deadly weapon, dangerous instrument, hammer, things like that, and a district judge can say, yeah, but it could involve poison, and poison might have been administered without force. The government says the modified categorical approach, if I understand them right, doesn't entitle a district judge to think up a possible non-force use if the general coverage of the statute is force. What do you say about that? I'd say a couple of things. First, I'm not going to tell Judge Hall that she can't think up an analogy. I just don't think that would go well in the courtroom, but let me get more . . . The question is, why do you tell us that she is entitled to think up a somewhat obscure example? I have many responses to that. First of all, you brought up the classic stuff when we think of first degree assault. Mr. Spector did the same, when you pull the trigger on the gun. In Connecticut, the subsection that we're talking about, the first degree assault statute, has dangerous weapon. That's the pulling the trigger. That's using a bat, a knife. All my cases back when I was in state court, everyone was stabbing each other. That was always what was going under that statute, but it also talks about dangerous instrument. When we look to the statutory definition, substance is one of them. It invites us to go down that road, quite frankly. Are most of the cases guns, knives, bats? Sure, they are. But the fact that . . . What's the logic of the proposition that with the intent to cause serious physical injury, you do a gentle thing like putting a cyanide pill in the person's pill tray? What's the logic of the proposition that that is not an episode of use of force? First, it has to be violent force. Well, violent force, it causes them to writhe in agony and die. Is it often going to involve . . . because that's focusing on the injury rather than the method, and when we look at the statute, the statute talks about the injury, not how we get there. I've got one other thing I wanted to address to the judge's comments, and then also I think it came up with the government as well. You mentioned the modified categorical approach, which is let's get the transcript, let's figure out what really happened here. If we had the change . . . Your Honor suggested that if we had the plea colloquy from state court way back in 1990, whatever year it was that he got convicted, we would know what he did. The government's saying, well, it looks like he probably shot somebody because that's what it said in the PSR. I don't know that we're even allowed to do that anymore under Mathis, right? Under Mathis, we have to stick to this higher level categorical approach, look at the elements of the offense and how that's defined, and we only go to look at transcripts or indictments, which in Connecticut, I agree with the government, it's an odd process. It's very inconsistent. But when we go to . . . we only go to do those to figure out, well, which subsection are we talking about if we have alternative elements? While it would be nice if we had a transcript in some ways because it would tell us more about the case, and I guess I'd have one more hill to climb, that use of the word hill wasn't intentional, I don't think the court wants to base its decision here on the idea that we are going to solve things by the categorical approach. I would point out just one thing about Hill, as my time runs out, is that's a Hobbs Act robbery case. Hobbs Act robbery has the word force in it. It's an element of that offense, quite often. Which is the subsection in Connecticut law that you say uses the word violent? Where do we find that? The first degree assault . . . doesn't have the word violent in it, but A-1 is the one that we're operating under. They did produce a judgment at some point when we were here originally on the motion for leave to file the successive habeas petition that makes reference to A-1. That's the one that says you do it with a weapon or a dangerous instrument. There's a lot of subsections. There's no requirement of violent injury. It's serious physical injury, right? There's no requirement of the use of violence. That's a great point. I adopted that early. He doesn't have to meet that. He just has to show use of force to inflict serious physical injury. With intent to do so. Well, I guess it depends on who's the he in that phrase. In the state court system, they don't have to show that force was involved. They don't have to show that violence was involved. They have to show that the person had an intent to cause a serious bodily injury, that they did cause a serious bodily injury, and that in this case, because it's A-1, it has to be either with a weapon or a dangerous instrument. Another way to look at it, I appreciate you're not going to agree with this, is the state court requires a showing of what the Supreme Court says, for federal purposes, is force. Well, I would disagree with that. You're right, Your Honor. I'm happy to talk about it more, but at this point, I see my time has run out, and I'll concede the floor. Thank you, counsel. Mr. Speck, you have two minutes for rebuttal. Thank you, Your Honor. Your Honor, I want to just go back to the answer to your question on where to find the statute. I blew that one on the opening. It is JA-176 is the judgment of conviction. It's a 1990 first degree assault conviction, and it's at 176 of the joint appendix. And then we did have the charging document, which is at page 234 of the joint appendix, and that charging document does not specify how the first degree assault was committed. It just cites the statute. So our view, just to summarize here, is when you look at the statute, which really to us is the most powerful source of information, what does the statute say? The statute says you have to have the intent, and that's important because there's plenty of statutes that have been analyzed which just talk about causing injury without saying intending. Here, you have to have the specific intent to cause serious physical injury by a deadly weapon or dangerous instrument. And when you look at Connecticut's definition of serious physical injury, that is injury which is capable of causing death, a bodily disfigurement, failure of an organ, I mean, no matter how. See, I don't have an issue with Judge Hall's hypotheticals at all, but my issue is where she drew her conclusion. You can create any hypothetical you want as long as you stick to the language of that statute. So if you want to say that you used, that your dangerous instrument was a feather, well, let's say if you stab somebody in the eye with that, with the intention of causing a brain injury, yeah, that's violent force. It really doesn't matter how you define the dangerous instrument because you have to have that specific intent to cause that serious physical injury. And in the government's view, that really separates out this statute from many of the other sort of more generalized statutes that we've looked at causing physical injury, touching. This is not that. I mean, this is a statute that to be guilty of it, you have to have that specific intent. And if you have that intent, then you absolutely have used violent force. So Your Honor, what the government asks here is that you vacate Judge Hall's decision on the 2255 and you reinstate the original judgment in the case. Thank you. Thank you both. We'll reserve decision.